1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10                           ----oo0oo----

11  PENSION TRUST FUND FOR
    OPERATING ENGINEERS LOCAL 3;
12  BOARD OF TRUSTEES OF THE
    PENSION TRUST FUND FOR
13  OPERATING ENGINEERS LOCAL 3;
    GIL CROSTHWAITE; ROBERT DOUB;
14  THOMAS HOLSMAN; JOHN HUMBER;
    JIM MURRAY; RICHARD PIOMBO;
15  RENE VERERUYSSEN; KEN WALTERS;
    LANCE WILHELM; RUSS BURNS;
16  CARL GOFF; FRANK HERRERA;
    ROBERT T. MILLER; WALT POWERS;
17  JOE VIEIRA; and ROB WISE;

18                                      NO. CIV. S-06-904 WBS JFM
                                        NO. CIV. S-06-905 WBS JFM
19           Plaintiffs,               NO. CIV. S-06-907 WBS JFM

20       v.                            ORDER RE: MOTIONS TO DISMISS,
                                       MOTIONS TO STRIKE, & MOTION
21                                     FOR A MORE DEFINITE STATEMENT

22  MCMORGAN & COMPANY; MCMORGAN &
    COMPANY, LLC; STANTON, KAY &
23  WATSON; WEINBERG, ROGER &
    ROSENFELD; VAN BOURG, ROGER &
24  ROSENFELD; JAMES WATSON; BARRY
    HINKLE; EDWARD MEVI; DAVID
25  HOWARD; PAYNE, THOMPSON,
    WALKER & TAAFFE; JOHN BONILLA;
26  CURTIS BROOKS; and DOES 1 TO
    100, INCLUSIVE;

27

28           Defendants.

                                1

PENSION TRUST FUND FOR OPERATING
ENGINEERS LOCAL 3; BOARD OF
TRUSTEES OF THE PENSION
TRUST FUND FOR OPERATING
ENGINEERS LOCAL 3; JOHN BONILLA;
RUSS BURNS; GIL CROSTHWAITE;
ROBERT DOUB; CARL GOFF;
FRANK HERRERA; THOMAS HOLSMAN;
JOHN HUMBER; ROBERT T. MILLER;
JIM MURRAY; RICHARD PIOMBO;
WALT POWERS; RENE VERERUYSSEN;
JOE VIEIRA; KEN WALTERS; LANCE
WILHELM; and ROB WISE;

       Plaintiffs.

v.

MCMORGAN & COMPANY, LLC; BARRY
HINKLE; DAVID HOWARD; EDWARD
MEVI; PAYNE, THOMPSON, WALKER,
& TAAFE; STANTON, KAY, &
WATSON; VAN BOURG, WEINBERG,
ROGER & ROSENFELD; JAMES WATSON;
WEINBERG, ROGER & ROSENFELD; and
DOES 1 TO 100, INCLUSIVE;

       Defendants.

PENSION TRUST FUND FOR OPERATING
ENGINEERS LOCAL 3; BOARD OF
TRUSTEES OF THE PENSION TRUST
FUND FOR OPERATING ENGINEERS
LOCAL 3; JOHN BONILLA; CURTIS
BROOKS; RUSS BURNS; GIL
CROSTHWAITE; ROBERT DOUB; CARL
GOFF; FRANK HERRERA; THOMAS
HOLSMAN; JOHN HUMBER; ROBERT
T. MILLER; JIM MURRAY; RICHARD
PIOMBO; WALT POWERS; RENE
VERERUYSSEN; JOE VIEIRA; KEN
WALTERS; LANCE WILHELM; and ROB
WISE;

       Plaintiffs.

v.

MCMORGAN & COMPANY; MCMORGAN &

2

1  COMPANY, LLC; LIFFEY, LLC;
   STANTON, KAY, & WATSON;
2  WEINBERG, ROGER & ROSENFELD;
   VAN BOURG, WEINBERG, ROGER, &
3  ROSENFELD; JAMES WATSON;
   BARRY HINKLE; EDWARD MEVI;
4  DAVID HOWARD; and PAYNE,
   THOMPSON, WALKER, & TAAFE;
5  and DOES 1 TO 100, INCLUSIVE;

6          Defendants.

7
                    ----oo0oo----

8          Currently before the court are three motions to dismiss

9  brought by three sets of defendants in each of three related

10 cases.  All of these motions share allegations that an investment

11 company and retained counsel mismanaged the investments of a

12 trust fund organized to provide pension benefits to members of a

13 labor union.  Accordingly, all of the motions in each of these

14 three cases are addressed herein.

15 I. Factual and Procedural Background

16         Plaintiff Pension Trust Fund for Operating Engineers

17 Local 3 (hereafter "Pension Trust Fund") is a trust fund

18 organized to provide pension benefits to members of a labor

19 union.  (06-904 Compl. ¶ 1.)  A board of trustees runs the fund,

20 and this board is also a plaintiff in this action.  (Id.)  The

21 remaining plaintiffs are trustees and fiduciaries who sit on the

22 board.  (Id. ¶ 2.)

23         Defendant McMorgan and Company, L.L.C.[1] agreed to serve

24 as the asset manager for Pension Trust Fund on or about September

25 1, 1995.  (Id. ¶¶ 3, 12.)  The duties of defendant McMorgan

26 _____

27         [1]    Defendants McMorgan & Company, L.L.C. and David Howard,
   an employee of McMorgan & Company, L.L.C., will collectively be
28 referred to as "the McMorgan defendants."

                              3

1  include supervising the investment of all assets of the fund that

2  the board of trustees requested it to manage, selecting brokers

3  and placing brokerage orders "[i]n its sole discretion and

4  authority," complying with the standards of fiduciary

5  responsibility required by ERISA, and providing support services

6  necessary to manage the account. (Id. ¶ 13.)  Additionally, the

7  agreement expressly provided that defendant McMorgan was an ERISA

8  fiduciary to the Pension Trust Fund.  (Id. ¶ 14.)

9       The Pension Trust Fund also retained defendant

10  Weinberg, Roger & Rosenfeld, L.L.C.[2] to perform "routine and

11  recurrent legal services the Fund has required and will continue

12  to require in the future." (Id. ¶ 21.)  These services included

13  attending all board and committee meetings; reviewing,

14  interpreting, and advising Pension Trust Fund about laws and

15  regulations that would affect the trust; and reviewing and

16  advising Pension Trust Fund regarding investment issues in

17  collaboration with parties including the investment manager.

18  (Id.)  Defendant Stanton, Kay & Watson, LLP[3] signed an almost

19  identical retainer agreement with Pension Trust Fund.  (Id. ¶¶

20

21

22

23  _____

24       [2]  Defendant Barry Hinkle is and was an attorney and
     partner in the law firm of Weinberg, Roger & Rosenfeld.  (06-904
25  Compl. ¶¶ 7-8.)  The court will refer to these defendants
     collectively as the "Weinberg defendants."

26       [3]  Defendant Edward Mevi is and was an attorney and
     partner in the law firm of Stanton, Kay & Watson, LLP; defendant
27  James Watson is and was an employee and/or agent of the same law
     firm.  (06-904 Compl. ¶¶ 9, 11.)  The court will refer to these
28  defendants as the "Stanton defendants."

1  22, 23.)[4]

2      A.   Factual Allegations Underlying Case No. 06-904

3          Beginning in the late 1960s, the Pension Trust Fund
4  invested its assets in several properties.  In approximately
5  1968, the Pension Trust Fund purchased about 3,590 acres of real
6  estate located in Rancho Murieta, California.  (Id. ¶ 24.)  The
7  relevant parts of this property were: Unit 5 (split into Parcels
8  A and B), and a "Hotel site" comprising 20.2 acres.  (Id. ¶ 27.)
9  The Hotel site was first sold to Jack Anderson in 1987 for
10  approximately $123,762.00 per acre.  (Id.)  However, Anderson
11  defaulted on the payments in approximately 1993 and the property
12  reverted back to the Pension Trust Fund.  (Id.)  In 2002, the
13  Pension Trust Fund sold the Hotel site and an additional 10.1
14  acres at a purchase price of approximately $72,528 per acre
15  (about half of the price the property was sold for in 1987).
16  (Id. ¶ 28.)  Escrow was extended over the next few years, but the
17  purchase price remained the same.  (Id. ¶ 29.)

18          In 2002, defendant McMorgan entered into several
19  contracts on behalf of the Pension Trust Fund to sell
20  approximately 59.7 acres of Parcel A and approximately 86.17
21  acres of Parcel B of the Rancho Murieta property.  (Id. ¶¶ 32,

22  _____

23      [4]   Each of the three related cases here--06-904, 06-905,
24  and 06-907 (Apr. 28, 2006 Notice of Related Cases)--involves the
    same four causes of action, but 06-907 contains an additional
    cause of action for fraud.  More significantly, each case
25  references a slightly different set of underlying facts.
    Briefly, Case No. 06-904 refers to the sale of different
26  investment properties for less than fair market value, Case No.
    06-905 relates to attorney/fiduciary malpractice for the failure
27  to attend a foreclosure sale, and Case No. 06-907 concerns
    allegations of overbilling for costs and fees by retained
28  attorneys.

34.)   For the sale of Parcel A, the purchase price of the land
was $51,402.00 per acre.   (Id. ¶ 32.)   For the sale of Parcel B,
the price was set at $35,653.00 per acre.   (Id. ¶ 34.)   Although
the real estate market appreciated between 2002 and 2004,
defendant McMorgan allowed numerous extensions of the contracts,
and eventually sold parcels A and B in 2004 for the price
originally agreed upon, despite the properties' subsequent
increase in value.   (Id. ¶¶ 33, 35.)   Defendant McMorgan
allegedly mismanaged the real estate properties belonging to the
Pension Trust Fund and caused it to incur significant losses.
(Id. ¶ 37.)   Additionally, the Stanton defendants and the
Weinberg defendants undertook the duty to oversee and participate
in the land sales and other real estate transactions by providing
legal counsel and advice.   (Id. ¶ 39.)   Plaintiffs allege that
they did not discover the mismanagement of the Pension Trust
Fund's assets by all of these defendants before August of 2005.
(Id. ¶ 40.)

        B.   Factual Allegations Underlying Case No. 06-905

            After the Pension Trust Fund sold some of the Rancho
Murieta property to Jack Anderson, Anderson sold two parcels to
Winncrest Homes, Inc.   (06-905 Compl. ¶¶ 24, 26, 27.)   By 1993,
Anderson and Winncrest Homes, Inc. had defaulted in making
payments, and the Pension Trust Fund instituted judicial
foreclosure proceedings against them on the advice of McMorgan &
Company.   (Id. ¶¶ 28, 29.)   Judgment on the foreclosure was
entered in 2000 and affirmed on appeal in 2003.   (Id. ¶ 31.)   The
Pension Trust Fund subsequently became the judgment creditor in
the amount of $17,000,000.00 against Winncrest (the judgment

1  debtor).  (Id.)

2       The Pension Trust Fund petitioned for a writ of sale of

3  the property to execute the judgment, and such a writ was issued.

4  (Id. ¶ 32.)  Individuals from defendant McMorgan & Company and

5  agents of the Stanton defendants (who, in turn, were acting as

6  agents for the Weinberg defendants) were to attend the sale to

7  bid on the property on behalf of the Pension Trust Fund.  (Id. ¶

8  33.)  Although the sale was noticed, defendant Mevi (of the

9  Stanton defendants) received a personal phone call regarding the

10 sale, and defendants Mevi and Howard planned to attend the sale,

11 both of these defendants arrived late to the sale, after the

12 property had been sold for $2,000.00.  (Id. ¶¶ 34-41.)

13 Significantly, however, the property was appraised for a value of

14 between $12,000,000.00 and $14,000,000.00.  (Id. ¶ 41.)  The

15 Pension Trust Fund filed suit to have the foreclosure set aside,

16 but the suit was not successful.[5]  (Id. ¶¶ 44, 47.)

17

18         [5]   The court takes judicial notice of the Weinberg
   defendants' submitted evidence attached to the Declaration of
19 Rachel Meny, including the trial court proceedings related to
   this litigation.  See Greeson v. Imperial Irr. Dist., 59 F.2d
20 529, 531 (9th Cir. 1932) (explaining that "[j]udicial knowledge
   is taken of all matters generally known" and further noting that
21 "the court is bound to take notice of public facts").
   "Ordinarily, when matters outside the pleadings are introduced on
22 a Rule 12(b)(6) motion, and these matters are not excluded by the
   court, the motion is to be treated as one for summary judgment
23 and disposed of as provided in Rule 56.  However, under Rule 201
   of the Federal Rules of Evidence, a district court may take
24 judicial notice of 'matters of public record' outside the
   pleadings without converting a motion to dismiss into a motion
25 for summary judgment."  Mann v. GTCR Golder Rauner, L.L.C., No.
   02-2099, 2006 WL 2473988, at *4 (D. Ariz. 2006) (citing MGIC
26 Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986))
   (other citations omitted).
27         Relatedly, the Stanton defendants request that the
   court take judicial notice of the underlying court documents in
28 Case No. 06-907.  (See Aug. 4, 2006 Stanton Defs.' Request for

C.    <u>Factual Allegations Underlying Case No. 06-907</u>

In the context of the judicial foreclosure proceedings against Anderson and Winncrest Homes, Inc., defendant McMorgan allegedly had the obligation and duty to protect the Pension Trust Fund's assets from unethical or incompetent provision by service providers, such as attorneys, to monitor the service providers more generally, and to monitor the payment of bills and invoices. (06-907 Compl. ¶¶ 59, 66, 73.)   The Weinberg defendants and the Stanton defendants were retained by the Pension Trust Fund to represent them in these proceedings. (<u>Id.</u> ¶¶ 32, 33, 37.)   Pursuant to the successful judicial foreclosure action, the Pension Trust Fund paid its attorneys what it now contends was an exorbitant amount for attorneys' fees, including improper costs for office furniture and equipment. (<u>Id.</u> ¶¶ 32-45.)   As evidence that the amounts paid were excessive and unreasonable, plaintiff notes that the court deciding the foreclosure proceedings, in the context of an attorneys' fees motion, halved the attorneys' fees requested by its attorneys (and previously billed to plaintiff), denying the law firms more than $7,000,000.00 that they had requested. (<u>Id.</u> ¶ 37.)

D.    <u>Legal Claims</u>

Based upon these underlying facts, each of the three

_____

Judicial Notice.)   Plaintiffs oppose this request, but because these documents are public facts, the court will take judicial notice of them.

However, the Weinberg defendants have additionally submitted "relevant documents regarding these proceedings." Aside from the court documents, the documents attached do not appear to be public information.   In order to address this motion as a motion to dismiss rather than converting it to a motion for summary judgment, the court will not consider these documents.

8

complaints alleges the following causes of action against all
defendants: (1) Professional Negligence; (2) Breach of Contract;
(3) Breach of Fiduciary Duty; and (4) Violations of the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§
1105, 1109, and 1132(a)(2) & (3).  Case No. 06-907 additionally
contains a cause of action for fraud.

Each of the three sets of defendants brings different
challenges to the complaints in these cases.  The Weinberg
defendants move to dismiss claims 1-3 as barred by the statute of
limitations, to strike plaintiffs' request for attorneys' fees in
the event claim 1 is not dismissed, and to dismiss claim 4 as
improperly brought against defendants not subject to the
fiduciary duties imposed by ERISA.  (Id.)

The Stanton defendants move to strike plaintiffs'
requests for attorneys' fees and costs, to strike the requests
for punitive and treble damages, and to dismiss plaintiffs'
fourth cause of action as improperly brought against a non-
fiduciary not subject to ERISA.  Additionally, the Stanton
defendants move to dismiss the fourth cause of action for failure
to state a claim under ERISA or alternatively move for a more
definite statement of the claim.  The Stanton defendants move to
dismiss counts 1-3 as barred by the statute of limitations in
Case No. 06-904 only.[6]  Finally, the Stanton defendants move to
dismiss the fifth cause of action in case no. 06-907 for failure
to plead fraud with particularity.

---

[6]    The Stanton defendants signed tolling agreements with
plaintiff Pension Trust Fund regarding the claims in cases 06-905
and 06-907, and therefore do not make this argument in those
cases.

1    The McMorgan defendants move to dismiss claims 1-3 as

2  against them in Case Nos. 06-904, 06-905, and 06-907, arguing

3  that these causes of action are state law claims that are

4  preempted by ERISA.[7]

5  II.  <u>Discussion</u>

6       A.   <u>Weinberg and Stanton Defendants' Motions to Strike</u>

7            I.   <u>Request for Attorneys' Fees</u>

8            The Stanton defendants move to strike the plaintiffs'

9  request for attorneys' fees and costs in the first cause of

10  action; the Weinburg defendants move to strike the plaintiffs'

11  request for attorneys' fees and costs in both the first and

12  second causes of action.  Federal Rule of Civil Procedure 12(f)

13  provides that "redundant, immaterial, impertinent, or scandalous

14  matters" may be "stricken from any pleading."  Such motions are

15  designed "to avoid the expenditure of time and money that must

16  arise from litigating spurious issues by dispensing with those

17  issues prior to trial . . . ."  <u>Sidney-Vinstein v. A.H. Robins</u>

18  <u>Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983).  However, "[m]otions to

19  strike are generally disfavored."  <u>Abney v. Alameida</u>, 334 F.

20  Supp. 2d 1221, 1234 (S.D. Cal. 2004); <u>Bureerong v. Uvawas</u>, 922 F.

21  Supp. 1450, 1478 (C.D. Cal. 1996) ("Rule 12(f) motions are

22

23       [7]   Defendant Liffey L.L.C. joins in this motion to
   dismiss.  However, defendant Liffey L.L.C. served its joinder in
24  the motion on August 16, 2006, two days prior to the time the
   opposition was due, and plaintiffs did not have sufficient notice
25  to include arguments against defendant Liffey in their
   opposition.  Additionally, defendant Liffey L.L.C. did not argue
26  their motion or explain the basis for their status as an ERISA
   fiduciary in the papers submitted to the court or during oral
27  argument.  Because the court has not been presented with the
   arguments for this motion, the court will not consider defendant
28  Liffey's joinder in the motion at this time.

generally 'disfavored' because they are 'often used as delaying tactics, and because of the limited importance of pleadings in federal practice.'" (quoting William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 9:375)). "If there is any doubt as to whether the allegations might be an issue in the action, [the] court[ should] deny the motion." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds, 510 U.S. 517, 534-35 (1994)).

Arguing that California follows the "American Rule" under which each party must bear their own attorneys' fees, defendants move to strike this requested relief.  Defendants point out that in California, a party may not recover attorneys' fees unless there is a statute, contractual provision, or rule that authorizes such an award.  Cal. Civ. Proc. Code § 1021. Because plaintiffs are not required to "plead entitlement to attorney fees as an item of damages in order to recover them in California,"[8] plaintiffs' request for attorneys' fees is not the proper target of a motion to strike, given that the court's decision here will have no impact on plaintiffs' ability to ultimately recover the relief sought.  Allstate Ins. Co. v. Loo, 46 Cal. App. 4th 1794, 1797 (1996) (citing Cal. Civ. Proc. Code § 1033.5(a)(10)); Cardinale v. La Petite Acad., Inc., 207 F. Supp. 2d 1158, 1163 (D. Nev. 2002) (making the same observation and

---

[8]    Attorneys' fees can simply be requested at the appropriate time through a noticed motion.  Allstate Ins. Co., 46 Cal. App. 4th at 1797 (citing Cal. Civ. Proc. Code § 1033.5(c)(5)).

11

denying defendant's 12(f) motion because "[t]he inclusion of claims for attorneys' fees in the Complaint does not constitute an 'insufficient defense or any redundant, immaterial, impertinent, or scandalous matter' such that a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) is proper"). But see Bianchi v. State Farm Fire & Cas. Co., 120 F. Supp. 2d 837, 842 (N.D. Cal. 2000) (striking plaintiff's request for attorneys' fees because the state statute providing for such relief was preempted by federal law).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters" and it is not clear how any of these purposes are served by striking from the complaint claims that plaintiffs are not even required to plead.  McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).  Defendants' motions to strike plaintiffs' request for attorneys' fees will therefore be denied without prejudice, because they are premature at this stage of the proceedings.

ii.  Requests for Punitive and Treble Damages

        Both the Weinberg and Stanton defendants additionally move to strike plaintiffs' claims for punitive damages in the first and third causes of action and treble damages in the second cause of action with respect to Case No. 06-907.  Plaintiffs acquiesce to defendants' contentions that they do not sufficiently allege a basis for punitive damages.  (Pls.' Opp'n to Weinberg Defs.' Mot to Dismiss and Mot. to Strike 16; Pls.' Opp'n to Stanton Defs.' Mot. to Dismiss and Mot. to Strike 11.) The court will not resolve a dispute that does not exist, and

12

1   will therefore grant plaintiff leave to amend these causes of

2   action.

3       B.   Motions to Dismiss

4           At the pleading stage, the plaintiff need only set

5   forth "a short and plain statement of the claim showing that the

6   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

7   Leatherman v. Tarrant County Narcotics Intelligence &

8   Coordination Unit, 507 U.S. 163, 168 (1993). A complaint need

9   only "give the defendant fair notice of what the plaintiff's

10  claim is and the grounds upon which it rests." Conley v. Gibson,

11  355 U.S. 41, 47 (1957). Consequently, on a motion to dismiss,

12  the court accepts the allegations in the complaint as true and

13  draws all reasonable inferences in favor of the pleader. Scheuer

14  v. Rhodes, 416 U.S. 232, 236 (1974); Cruz v. Beto, 405 U.S. 319,

15  322 (1972).

16          Additionally and significantly, under Rule 8 of the

17  Federal Rules of Civil Procedure, "[a] party may set forth two or

18  more statements of a claim or defense alternatively or

19  hypothetically." Rule 8 does not require that claims pled in the

20  alternative be consistent with each other. Moreover, the Ninth

21  Circuit has explained that, because of the liberality of Rule 8

22  pleading standards, "a pleading should not be construed as an

23  admission against another alternative or inconsistent pleading in

24  the same case." McCalden v. Cal. Library Ass'n, 955 F.2d 1214,

25  1219 (9th Cir. 1990) (citation omitted).

26          i.   McMorgan Defendants' Motion to Dismiss State Law

27               Claims as Preempted by ERISA

28          The McMorgan defendants argue that plaintiffs' state

13

law claims are preempted by ERISA.  Their preemption argument

rests on the notion that "any state-law cause of action that

duplicates, supplements, or supplants the ERISA civil enforcement

remedy conflicts with the clear congressional intent to make the

ERISA remedy exclusive and is therefore pre-empted." Aetna

Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (citations

omitted) (concluding that ERISA preempted state law claims where

the complaint did not allege "any violation of a legal duty

independent of ERISA").  In response, plaintiffs contend that,

pursuant to Rule 8, they have alternatively pled state and

federal claims in an effort to protect themselves if it is

determined at a later stage in the litigation that they cannot

maintain the ERISA claim in the complaint.

        Regardless of whether plaintiffs have plead the ERISA

and state law causes of action in the alternative, it is unclear

what basis plaintiffs have for claiming that the McMorgan

defendants are subject to state law claims.  The contract signed

by the Pension Trust Fund and the McMorgan defendants states that

McMorgan & Company was hired as an investment manager and an

ERISA fiduciary.  It is difficult to understand how state law

claims are colorable against the McMorgan defendants given

"ERISA's provision that 'a person is a fiduciary with respect to

a plan to the extent [that] he renders investment advice for a

fee or other compensation, direct or indirect, with respect to

any moneys or other property of such plan.'" See Dudley

Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co., 302

F.3d 1, 4 (1st Cir. 2002) (citing 29 U.S.C. § 1002(21))

(dismissing state law claims as preempted by ERISA against an

investment manager who acted as an ERISA fiduciary).[9]  Plaintiffs
have not alleged how defendants may have acted beyond the scope
of exercising their discretion as an ERISA fiduciary such that
they may be subject to state law claims that do not relate to the
ERISA claim.

        Because defendants have not been given sufficient
notice of how these state law claims against them do not
duplicate, supplement, or supplant the provisions of ERISA
referenced by plaintiffs' fourth cause of action, the state law
claims will be dismissed with leave to amend.

              ii.  Stanton and Weinberg Defendants' ERISA Fiduciary
                   Status

        The Stanton defendants and the Weinberg defendants
contend that as retained counsel for plaintiffs, they were not
ERISA fiduciaries, and a cause of action for breach of duty under
ERISA cannot be brought against them.  "ERISA permits suits for
breach of fiduciary duty only against ERISA defined fiduciaries."

---

        [9]    Plaintiffs cite Coleman v. Standard Life Insurance
Company, which is a case in which this court concluded that where
"there has been no determination as to whether ERISA applies, and
[the] defendant has presented no evidence of its own to that
effect other than citations to allegations in the complaint,"
state law claims pled in the alternative should not be dismissed
based on their preemption by ERISA.  Coleman v. Standard Life
Ins. Co., 288 F. Supp. 2d 1116, 1121 (E.D. Cal. 2003).
        Coleman involved a defendant that explicitly disputed
whether it was an ERISA fiduciary.  Id.  By contrast, the
complaint here describes the McMorgan defendants as ERISA
fiduciaries for their role, and they do not contest this
characterization.  Additionally, Coleman addressed a situation
involving a different type of ERISA fiduciary than is involved
here.  The defendant in Coleman was an insurance company that
allegedly failed to provide long-term disability benefits,
whereas the relevant defendant here is an investment management
company acting as a fiduciary over a pension trust fund.
Therefore, Coleman is inapplicable to this case.

                                  15

<u>Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.</u>, 990 F.2d 513, 516 (9th Cir. 1993).  "To become a[n ERISA] fiduciary, the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan." <u>Az. State Carpenters Pension Trust Fund v. Citibank</u>, 125 F.3d 715, 721-22 (9th Cir. 1997).  Absent a showing of the assignment of one of these duties, an attorney is not an ERISA fiduciary. <u>Yeseta v. Baima</u>, 837 F.2d 380, 385 (9th Cir. 1988) (concluding that an attorney was not an ERISA fiduciary when neither his "status as an attorney nor as executor showed he controlled the Plan in a manner other than by usual professional functions").

"While an attorney's duty to his client is that of a fiduciary, the mere fact that an attorney represents an ERISA plan does not make the attorney an ERISA fiduciary because legal representation of ERISA plans rarely involves the discretionary authority or control required by the statute's definition of 'fiduciary.'" <u>Custer v. Sweeney</u>, 89 F.3d 1156, 1162 (4th Cir. 1996).  Conversely, "merely because a person serves as legal counsel to a pension plan does not automatically preclude a finding that the attorney is also an ERISA fiduciary, at least as to some activities." <u>Id.</u>  "Fiduciary status under ERISA is to be construed liberally." <u>Az. State Carpenters</u>, 125 F.3d at 720.

The Stanton defendants and the Weinberg defendants were retained as counsel by the Pension Trust Fund.  Their retainer agreements, which were virtually identical, set forth responsibilities to review and advise Pension Trust Fund regarding <u>legal</u> issues related to investments.  (06-907 Compl. ¶

16

21.[10])   There is no indication in these listed duties that these defendants had control of the plan or plan assets, exercised discretion in administering the plan, or offered investment advice.   The agreement does indicate, however, that counsel were to additionally perform any "non-routine legal services" not included in their duties, and that the attorneys may work on "real estate transactions, sales, and leases." (Id.)   The complaint further alleges that the Stanton defendants undertook a duty to oversee the real estate transactions at issue here.   (Id. ¶ 39.)

These allegations do not sufficiently allege that the Stanton defendants or the Weinberg defendants acted or undertook to act beyond the ordinary role of retained counsel to exercise discretion over the plan or to make investment decisions. Nevertheless, the court is not certain that plaintiffs could not make such allegations.   Accordingly, this motion to dismiss will also be granted with leave to amend to include allegations explaining what actions the Stanton defendants undertook beyond the actions a lawyer would undertake for a client.[11]

iii.  Stanton and Weinberg Defendants' Statute of Limitations Arguments

The Stanton defendants and the Weinberg defendants contend that claims one through three should be dismissed as

---

[10]   The allegations relevant here are the same in all three complaints.

[11]   The Stanton defendants move, in the alternative, for a more definite statement of the ERISA claims against them. Because the court will grant their motion to dismiss, it need not consider the motion for a more definite statement.

time-barred in Case No. 06-904.  The Weinberg defendants
additionally make this argument with respect to Cases No. 06-905
and 06-907.  "A plaintiff must bring a claim within the
limitations period after accrual of the cause of action."  Fox v.
Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (2005).
"Generally speaking, a cause of action accrues at the time when
the cause of action is complete with all of its elements."  Id.
(internal quotations and citation omitted).  The parties agree
that California Code of Civil Procedure § 340.6 provides the
limitations period for these claims.  (Weinberg Defs.' Mot. to
Dismiss 4-5; Stanton Defs.' Mot. to Dismiss 4; Pls.' Opp'n to
Mot. to Dismiss 3-4.)

        Under California Code § 340.6, unless it is tolled, the
statute of limitations expires "one year after the plaintiff
discovers, or through the use of reasonable diligence should have
discovered, the facts constituting the wrongful act or omission,
or four years from the date of the wrongful act or omission,
whichever occurs first."  "[W]hen the plaintiff has notice of
information of circumstances to put a reasonable person on
inquiry, or has the opportunity to obtain knowledge from sources
open to his investigation (such as public records or corporation
books), the statute commences to run."  McKelvey v. Boeing N.
Am., Inc., 74 Cal. App. 4th 151, 160 n.11 (1999) (quoting 3 B.E.
Witkin, California Procedure § 602 at 773 (4th ed. 1996)).
Moreover, a "plaintiff must plead (and later prove) the facts
showing . . . [that] in the exercise of reasonable diligence the

facts could not have been discovered at an earlier date."[12]   Id.
However, the statute of limitations can be tolled if "[t]he
attorney continues to represent the plaintiff regarding the
specific subject matter in which the alleged wrongful act or
omission occurred . . . ."  Cal. Code Civ. Pro. § 340.6.

### a. Case No. 06-904

Plaintiffs' first three claims are based upon the sale
of property in 2004.  Because plaintiffs allege that the harm
they faced was the sale of property for less than its fair market
value, the cause of action was "complete with all of its
elements" on the date of the sale, and that is when the cause of
action would ordinarily accrue.  Although plaintiffs do not
allege that they were unaware of the sale of the property at the
time it occurred, they allege that defendants' breaches of the
standard of care "were not discovered by plaintiffs until after
August 2005," and that their suit was timely when brought within
a year of the date of this discovery, in March of 2006.

Yet nowhere in the complaint do plaintiffs explain why
this information could not have been discovered at an earlier
date with the exercise of reasonable diligence.  Plaintiffs
attempt to shirk this burden by arguing that expert testimony was
necessary for plaintiffs to determine that they had been injured.

---

[12]   This heightened pleading standard would seem to
conflict with the liberal notice pleading standard provided by
Federal Rule of Civil Procedure 8(a).  However, this court has
previously noted that "the Ninth Circuit has unequivocally held
that in order to rely on a defense to a statute of limitations
challenge provided by state law, plaintiff must meet the pleading
requirements of that state law."  Adobe Lumber, Inc. v. Hellman,
415 F. Supp. 2d 1070, 1081 (E.D. Cal. 2006) (citing Cal. Sansome
Co. v. U.S. Gypsum, 55 F.3d 1402, 1407 (9th Cir. 1995)).

This assertion does not change the fact that plaintiffs knew the property was sold and for what price.  After the property was sold, plaintiffs had a year to "obtain knowledge from sources open to [their] investigation (such as public records or corporation books)," McKelvey, 74 Cal. App. 4th at 160 n.11, and according to the allegations in the complaint, they did not do so.

However, California Code of Civil Procedure § 340.6(a)(2) additionally provides that the statute of limitations may be tolled if the Stanton defendants continued to represent plaintiffs "regarding the specific subject matter in which the alleged wrongful act or omission occurred" (emphasis added).  More specifically,

> The continuous representation rule, as codified in section 340.6, subdivision (a), is not triggered by the mere existence of an attorney-client relationship.  Instead, the statute's tolling language addresses a particular phase of such a relationship--representation regarding a specific subject matter.  Moreover, the limitations period is not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff.

Foxborough v. Van Atta, 26 Cal. App. 4th 217, 228-29 (1994).  The specific subject matter at issue here appears to be the sale of the properties in 2004 for less than their market value.  Plaintiffs have not explained or alleged how their attorneys continued to represent them specifically with regard to completed transactions after those transactions were completed, and they simply contend that defendants have "represented the [Pension Trust Fund (PTF)] at all relevant times mentioned herein and

1  continue to represent the PTF up to and including the date of the

2  filing of this complaint." (06-904 Compl. ¶ 40.)  Based on these

3  vague allegations in the complaint, it is unclear whether the

4  Stanton and Weinberg defendants continued to represent plaintiffs

5  regarding the same subject matter.  Thus, the court will dismiss

6  these counts without prejudice, but will also give plaintiffs

7  leave to amend to explain how the continuing representation

8  doctrine operates here to toll the statute of limitations.

9                      b.   Case No. 06-905

10       Plaintiffs' first three causes of action in Case No.

11  06-905 are based on the foreclosure sale that occurred on

12  February 24, 2004.  Because plaintiffs allege that the harm they

13  faced was the sale of property for millions of dollars less than

14  its market value, the cause of action was "complete with all of

15  its elements" on the date of the foreclosure sale.  Thus, that is

16  when the cause of action would ordinarily accrue unless

17  plaintiffs did not discover the existence of this cause of action

18  until after the fact, or could not have discovered it with the

19  exercise of reasonable diligence.

20       Plaintiffs do allege that defendants' breaches of the

21  standard of care "were not discovered by plaintiffs until after

22  August 2005," and that their suit was timely when brought within

23  a year of the date of this discovery, in March of 2006.

24  Plaintiffs additionally argue that they did not understand the

25  legal repercussions of the missed sale because there were ongoing

26  efforts to resolve the matter, although they do not contend that

27  they did not know about the harm that had been done to them.

28       Plaintiffs' argument simply establishes that plaintiffs

                              21

1   were exploring the possibility of fixing the harm in a manner

2   other than this lawsuit.  The complaint does not allege that

3   plaintiffs were unaware of the sale of the property at the time

4   it occurred, nor does it explain how they could be unaware of the

5   fact that such an egregious mistake occurred.  Additionally,

6   plaintiffs do not allege that there were ongoing efforts to

7   resolve the matter or when these efforts occurred in their

8   complaint.  Thus, plaintiffs have not sufficiently alleged that

9   they did not know or could not have known of the existence of

10  this cause of action until August of 2005.  See In re Calpine

11  Corp. Sec. Litig., 288 F. Supp. 2d 1054, 1074 (N.D. Cal. 2003)

12  ("In adjudicating a motion to dismiss, the court need not accept

13  as true unreasonable inferences or conclusory legal allegations

14  cast in the form of factual allegations." (citing W. Mining

15  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981))).

16          Nevertheless, as previously discussed, California Code

17  of Civil Procedure § 340.6(a)(2) provides that the statute of

18  limitations may be tolled if the Weinberg defendants continued to

19  represent plaintiffs "regarding the specific subject matter in

20  which the alleged wrongful act or omission occurred" (emphasis

21  added).  The specific subject matter at issue here appears to be

22  the failure of the attorneys to attend the foreclosure sale, and

23  the subsequent sale of the property for far less than its market

24  value.  Although plaintiffs allege that the Weinberg defendants

25  continued to represent them, they do not explain how this

26  representation was related to the same subject matter that

27  underlies these claims.  (See 06-905 Compl. ¶ 50 (alleging that

28  defendants "represented the [Pension Trust Fund (PTF)] at all

22

1  relevant times mentioned herein and continue to represent the PTF

2  up to and including the date of the filing of this complaint").)

3  It is possible that the Weinberg defendants' representation in

4  attempting to undo the sale or in drafting tolling agreements

5  between plaintiffs and other defendants was representation on

6  this specific subject matter, and that this representation may

7  have tolled the statute of limitations such that this case was

8  timely filed.  Therefore, the court will dismiss these claims but

9  allow plaintiff leave to amend.

10                    c.   Case No. 06-907

11        The Weinberg defendants contend that claims one, two,

12  three, and five in Case No. 06-907 should be dismissed as time-

13  barred.  Plaintiffs' first, second, third, and fifth causes of

14  action are based on the attorneys' fees paid during judicial

15  foreclosure proceedings, the appeals for which concluded in July

16  2003.  Plaintiffs allege that defendants' breaches of the

17  standard of care "were not discovered by plaintiffs until after

18  August 2005," and that their suit was timely when brought within

19  a year of the date of this discovery, in March of 2006.

20  Plaintiffs contend that they did not understand the billing

21  charges and further would need expert testimony to have

22  understood them.

23        The specific subject matter at issue in these causes of

24  action appears to be the overbilling by the attorneys during the

25  foreclosure proceedings.  This complaint, like the others,

26  alleges that "all defendants named herein have represented the

27  [Pension Trust Fund (PTF)] at all relevant times mentioned herein

28  and continue to represent the PTF up to and including the date of

1   the filing of this complaint." (06-907 Compl. ¶ 47.) Plaintiffs

2   claim that there are facts they could allege to supplement the

3   conclusory allegations in the complaint and explain how the

4   Weinberg defendants continued to represent them through 2006.

5   (Pls.' Opp'n to Mot. to Dismiss 6.)

6        Here, too, it is unclear how long the Weinberg

7   defendants represented plaintiffs on this specific subject

8   matter, and the court cannot determine from the allegations in

9   the complaint that the statute of limitations is tolled with

10  respect to these causes of action. Therefore, these causes of

11  action should be dismissed as well, and plaintiff should be given

12  an opportunity to amend the complaint.

13              iv.  Stanton Defendants' Motion to Dismiss Cause of

14                   Action for Fraud in 06-907

15       The Stanton defendants additionally argue that count 5

16  does not plead fraud with sufficient particularity to survive a

17  motion to dismiss. Federal Rule of Civil Procedure 9(b) provides

18  that "[i]n all averments of fraud or mistake, the circumstances

19  constituting fraud or mistake shall be stated with

20  particularity." "To avoid dismissal for inadequacy under Rule

21  9(b), [a] complaint would need to 'state the time, place, and

22  specific content of the false representations as well as the

23  identities of the parties to the misrepresentation.'" Edwards v.

24  Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004); see also

25  Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) ("The

26  complaint must specify such facts as the times, dates, places,

27  benefits received, and other details of the alleged fraudulent

28  activity.").

1          Plaintiffs allege that the Stanton defendants, the

2    Weinberg defendants, and two other sets of defendants

3    "intentionally and knowingly overbilled" the Pension Trust Fund

4    by submitting bills and costs while knowing they were

5    unreasonable, excessive, and/or not incurred on behalf of work

6    performed for the Pension Trust Fund.  (Compl. ¶ 79.)   Without

7    greater specificity as to times, dates, the contents of and the

8    parties to these alleged misrepresentations, the complaint does

9    not sufficiently allege a cause of action for fraud.   Therefore,

10   the court will dismiss this cause of action with leave to amend.

11   III. Conclusion

12          In Case No. 06-904, IT IS THEREFORE ORDERED that:

13          (1) the first, second, and third causes of action

14   against the McMorgan defendants be, and the same hereby are,

15   DISMISSED WITHOUT PREJUDICE.

16          (2) the complaint as against the Weinberg defendants

17   and the Stanton defendants be, and the same hereby is, DISMISSED

18   WITHOUT PREJUDICE.

19          (3) with respect to all other defendants and/or claims,

20   defendants' motions to dismiss, to strike and for a more definite

21   statement be, and the same hereby are, DENIED.

22          In Case No. 06-905, IT IS THEREFORE ORDERED that:

23          (1) the first, second, and third causes of action

24   against the McMorgan defendants be, and the same hereby are,

25   DISMISSED WITHOUT PREJUDICE.

26          (2) the complaint as against the Weinberg defendants

27   be, and the same hereby is, DISMISSED WITHOUT PREJUDICE.

28          (3) the fourth cause of action as against the Stanton

1  defendants be, and the same hereby is, DISMISSED WITHOUT

2  PREJUDICE.

3         (4) with respect to all other defendants and/or claims,

4  defendants' motions to dismiss, to strike and for a more definite

5  statement be, and the same hereby are, DENIED.

6         In Case No. 06-907, IT IS THEREFORE ORDERED that:

7         (1) the first, second, and third causes of action

8  against the McMorgan defendants be, and the same hereby are,

9  DISMISSED WITHOUT PREJUDICE.

10        (2) the complaint as against the Weinberg defendants

11  be, and the same hereby is, DISMISSED WITHOUT PREJUDICE.

12        (3) the fourth and fifth causes of action as against

13  the Stanton defendants be, and the same hereby is, DISMISSED

14  WITHOUT PREJUDICE.

15        (5) with respect to all other defendants and/or claims,

16  defendants' motions to dismiss, to strike and for a more definite

17  statement be, and the same hereby are, DENIED.

18        Plaintiff is hereby given 30 days from the date of this

19  order to file an amended complaint in each of these three cases

20  consistent with this order.

21  DATED:  September 24, 2006

22

23

24  _____
    WILLIAM B. SHUBB
25  UNITED STATES DISTRICT JUDGE

26

27

28

26